[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15372
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-00170-WLS


ELIJAH WATSON,

Plaintiff-Appellant,

versus

DIVISION OF CHILD SUPPORT SERVICES,
GINA LOUIS,
Agent. Division of Child Support Services,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 24, 2014)

Before CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Elijah Watson, an African American proceeding pro se, appeals the district court's dismissal of his amended civil rights complaint against the Georgia Division of Child Support Services ("DCSS") and one of its case agents, Gina Louis, for violating his equal protection rights under the Fourteenth Amendment. In his original complaint, Watson alleged that Louis "violated [his] civil rights" and discriminated against him based on his race when she told him that he should not be a certified nursing assistant but instead "a fast food worker, Target worker, stocker at Walmart, or a worker on [the] back of a dock."  He also alleged that Louis insinuated that "all black men are the same" when she stated, "[Y]'all need to get it together!  I am tired of doing default papers."

After he obtained leave to proceed in forma pauperis and was ordered to file a new complaint identifying the specific constitutional right that he was denied, Watson filed an amended complaint alleging that DCSS and Louis violated his Fourteenth Amendment equal protection rights when Louis stated that he "should not be a certified nursing assistant (CNA) but, rather that [he] should be a fast food worker, Target worker, stocker at Walmart, or a worker on the back of a dock." Watson claimed that this statement constituted unlawful discrimination because it assigned African Americans, like himself, "inferior legal and economic status." The district court dismissed Watson's amended complaint under 28 U.S.C. § 1915(e)(2)(B), which requires a court to dismiss an in forma pauperis proceeding

2

if it is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  The court concluded that DCSS, as a state agency, was entitled to sovereign immunity under the Eleventh Amendment and that Louis' alleged statements did not violate Watson's equal protection rights.

We review de novo a district court's dismissal of a complaint on Eleventh Amendment grounds or for failure to state a claim for relief.  See United States v. Ala. Dep't of Mental Health & Mental Retardation, 673 F.3d 1320, 1324 (11th Cir. 2012); Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).  To state an equal protection claim, a plaintiff must demonstrate that similarly situated persons outside his protected class were treated more favorably and that "the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."  Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006); see also Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009).

3

In this case, the district court properly dismissed Watson's equal protection claim against DCSS based on Eleventh Amendment immunity.  The Eleventh Amendment bars federal lawsuits against a state and its agencies or departments unless the state has waived its sovereign immunity or Congress has abrogated that immunity.  See, e.g., Schopler v. Bliss, 903 F.2d 1373, 1378–79 (11th Cir. 1990).  It is undisputed that DCSS is an agency of the State of Georgia, and there is no indication that Georgia has waived its sovereign immunity in federal court.  Congressional abrogation is also not at issue because "[t]he Fourteenth Amendment does not by its own force override the States' Eleventh Amendment immunity, nor did Congress abrogate that immunity when it enacted 42 U.S.C. § 1983," which provides a mechanism for enforcing constitutional rights in federal court.  Id. at 1379 n.4 (citations omitted); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10 (1989) (explaining that in enacting § 1983, which "provides a federal form to remedy many deprivations of civil liberties," Congress had "no intention to disturb States' Eleventh Amendment immunity").

Watson's equal protection claim against Louis was also subject to dismissal for failure to state a claim on which relief may be granted.  Courts have held that offensive or derogatory statements, even if racially tinged or racially motivated, do not violate equal protection guarantees unless they are so pervasive as to amount to

4

racial harassment or are accompanied by some other conduct that deprives a person of the equal protection of the laws.  See Blades v. Schuetzle, 302 F.3d 801, 805 (8th Cir. 2002) ("[T]he use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment."); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.  Standing alone, simple verbal harassment does not . . . deprive a [person] of a protected liberty interest or deny [him] equal protection of the laws.") (citations omitted); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) ("[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation.").  Because the Equal Protection Clause is concerned with discriminatory treatment or action, "[w]here the conduct at issue consists solely of speech, there is no equal protection violation."  Bramer, 180 F.3d at 705–06.  To hold otherwise would raise serious concerns under the First Amendment, which prohibits holding a person liable for her speech "simply because it is upsetting or arouses contempt."  See Snyder v. Phelps, — U.S. —, 131 S.Ct. 1207, 1219 (2011).

For these reasons, we affirm the dismissal of Watson's amended civil rights complaint.

**AFFIRMED.**